FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

AUG 2 5 2006
11:59 a.m.
Stephan Harris, Clerk
Cheyenne

**United States District Court**
**for the District of Wyoming**

| | |
|---|---|
| MARIO CORDOVA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-CV-264-B |
| ) | |
| CITY OF CHEYENNE; JACK ) | |
| SPIKER in his official and ) | |
| individual capacity; ROBERT ) | |
| D. FECHT in his official ) | |
| and individual capacity; ) | |
| OFFICER MYNATT in his ) | |
| official and individual ) | |
| capacity; OFFICER GEFFREY ) | |
| MIMS in his official and ) | |
| individual capacity; ) | |
| OFFICER ROB DEFOE in his ) | |
| official and individual ) | |
| capacity; OFFICER MICHAEL ) | |
| SUTTON in his official and ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |

---

**Order Granting Summary Judgment on Plaintiff's 42 U.S.C. § 1983 Claim for Relief and Dismissing Without Prejudice Plaintiff's State Law Claims for Relief**

---

Plaintiff Mario Cordova alleges that Cheyenne police officers used excessive force to arrest him during a traffic stop on January 17, 2004. He asserts 42 U.S.C. § 1983 claims for violations of his Fourth, Eighth, and Fourteenth Amendment rights and state law

claims for negligence, battery, and intentional infliction of emotional distress. The various Defendants seek summary judgment. After considering the motions, reviewing the materials on file, and hearing oral argument, the Court finds that all of the Defendants are entitled to summary judgment on Plaintiff's section 1983 claim and that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## BACKGROUND

### I.  Statement of Parties and Jurisdiction

Plaintiff Mario Cordova is a resident of Cheyenne, Wyoming. The named Defendants are officials or employees of the City of Cheyenne. At all times relevant to the alleged assault, Defendant Jack Spiker was the mayor of Cheyenne, and Defendant Robert Fecht was chief of police. However, neither Defendant Spiker nor Defendant Fecht were present when Plaintiff Cordova was arrested. Defendants Andy Mynatt, Geffrey Mims, Robert Defoe, and Michael Sutton were Cheyenne police officers at the time of the alleged assault. All four officers were present when Cordova was arrested. All of the named Defendants are sued in both their individual and official capacities. Since a section 1983 suit against a municipal officer in his or her official capacity is the same as a suit

against the municipality, the Defendants in this case are the City of Cheyenne and the individual officials of the city -- the mayor, the police chief, and the police officers. Myers v. Oklahoma County Bd. of County Com'rs, 141 F.3d 1313, 1316 n.2 (10th Cir. 1998) (quoting Watson v. City of Kansas City, 857 F.2d 690, 695 (10th Cir. 1988) (citation omitted)).

The Plaintiff invokes this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343 to adjudicate his constitutional claims under 42 U.S.C. § 1983. Plaintiff invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to adjudicate his state law claims under the Wyoming Governmental Claims Act, Wyo. Stat. §§ 1-39-101 -- 121.

## II. Statement of Facts

On the night of January 17, 2004, Defendant Officer Andy Mynatt responded to a call regarding a fight at Goofy's Tavern on East Lincolnway in Cheyenne. Officer Mynatt was accompanied that night by David Buchmeier, a civilian ride-along who was not an employee of the City of Cheyenne. As Officer Mynatt approached the tavern in his patrol car, Plaintiff Mario Cordova and his cousin Epitacio "Epi" Hernandez were driving away from Goofy's. Plaintiff Cordova, who was intoxicated, drove his car through a parking lot

and across three lanes of traffic onto East Lincolnway. Defendant Mynatt saw this traffic violation and turned on his overhead lights to initiate a traffic stop. Plaintiff Cordova ignored Officer Mynatt's flashing lights and continued down Lincolnway, turning left onto Fremont Street. As Cordova began to turn, Officer Mynatt continued to follow and turned on his siren. Plaintiff Cordova saw the flashing lights and heard the siren, but refused to stop. Instead, he turned right onto 12th Street, and then parked his car in front of a house in the 2400 block of East 12th Street. Although it was unknown to the officers at the time, the house belonged to Cordova's cousin, George Garcia.

After this low-speed chase, Defendant Mynatt stopped his patrol car so that his right front tire was adjacent to Cordova's left rear tire. He then exited his patrol car with his gun drawn. Mr. Buchmeier remained in the front seat of the patrol car. Defendant Officer Mims, who had heard of the low-speed chase on his radio, pulled up a moment later. Defendant Officer Defoe arrived moments after that. Officer Mynatt was not aware of the presence of the other officers when he first exited his car and confronted the Plaintiff.

Plaintiff Cordova exited his vehicle with this hands in the

air and said "Okay, I'm done." His speech was slurred and he leaned heavily on his car door, so he appeared to be intoxicated. Officer Mynatt, gun in hand, loudly ordered Cordova to get back into his car. Cordova did not sit down in his car; instead, he stumbled towards Mynatt. Officer Mynatt again ordered Cordova to get back into his car, but Cordova continued to move towards Mynatt. When Cordova was within a couple feet of him, Officer Mynatt pushed Cordova back with his left hand while continuing to hold his gun in his right hand. Cordova fell back against his car, told the officer not to put his hands on him, and again began to stumble towards Mynatt. Defendant Mims, who had exited his patrol car and drawn his gun, then holstered his gun, moved in quickly, and took Cordova down to the ground using a straight arm bar technique. During the takedown, Cordova's face allegedly struck the ground, causing lacerations and bruises. Defendant Mims and Defendant Defoe then attempted to handcuff Cordova. While doing so, Mims allegedly sat on Cordova.

Shortly after the takedown, Defendant Sutton and Reserve Officer Marquer arrived on the scene. These officers assisted in handcuffing the Plaintiff. After Cordova was handcuffed, Mims, Defoe, and Sutton then carried him by the shoulders and knees over

to the sidewalk and laid him face-down. At some point, an officer allegedly kneeled on Cordova's back while Cordova was face-down on the ground. Cordova was bleeding from his face at this time.

At some time while the Plaintiff was being handcuffed, his cousin George Garcia came out to see what was happening. While sitting on top of Cordova, Officer Mims told Mr. Garcia to go back inside, which he did. An ambulance was eventually called and Cordova was taken to the hospital. He was initially diagnosed with possible facial fractures, but subsequent CT scans revealed no fractures or other abnormalities.

### III. Plaintiff's Claims for Relief

Plaintiff Cordova claims that the defendant police officers used excessive force to arrest him in violation of the federal constitution and Wyoming state law, and that the city, the mayor, and the police chief are legally liable for the officers' use of excessive force. He asserts that Officer Mynatt brandished his gun unnecessarily and dangerously after the Plaintiff stopped his car. He further asserts that Officer Mims unreasonably took him to the ground, injuring his face. He finally asserts that it was unreasonable for the officers to sit and kneel on him while handcuffing him. He pursues four claims for relief: **(1)** section

1983 action for violation of his Fourth, Eighth, and Fourteenth Amendment rights by all Defendants; **(2)** state law negligence against all Defendants; **(3)** state law battery against Officers Mynatt, Mims, Defoe, and Sutton only; and **(4)** state law intentional infliction of emotional distress (presumably against the police officers only). He seeks compensatory damages for personal injuries, humiliation, and pain and suffering. He also seeks punitive damages and attorney's fees.

### *DISCUSSION*

There are three separate motions for summary judgment from the various Defendants; taken together, they seek to dispose of all claims made by the Plaintiff for various reasons. Regarding Plaintiff's state law causes of action, the individual defendants argue this Court lacks jurisdiction to decide Plaintiff's state law claims because Plaintiff failed to file an itemized statement of damages as required by Art. 16 § 7 of the Wyoming Constitution and the Wyoming Governmental Claims Act, §§ 1-39-101 -- 120. See Beaulieu v. Florquist, 20 P.3d 521 (Wyo. 2001). The Court will dismiss this case without deciding this issue.

Regarding the Plaintiff's section 1983 cause of action, which is the basis for this Court's jurisdiction over this dispute and

the focus of the parties' arguments, the Defendants make several different arguments for summary judgment. The defendant police officers who were present at the scene -- primarily Officer Mims -- argue that their use of force was reasonable under the circumstances, so there was no constitutional violation. In the alternative, they argue they are entitled to qualified immunity for any possible constitutional violation. Officers Mynatt, Defoe, and Sutton also argue that they did not personally participate in the take down of Cordova and that the Officer Mims acted too quickly for them to intervene even if they had thought the take down was unreasonable. The mayor and police chief argue that they did not personally participate in the arrest of the Plaintiff and there is no other affirmative link between their conduct and the arrest necessary to invoke supervisory liability under section 1983. The City of Cheyenne argues that there was no constitutional violation, and, even if there were a violation, it was not committed pursuant to a custom, policy, practice, or regulation of the city such that municipal liability under section 1983 applies. The Plaintiff generally responds that there are issues of material fact about whether the force used to arrest him was unconstitutionally excessive and whether the excessive force was the result of the

acts or omissions of the police chief and mayor such that liability may be imposed upon the individuals as supervisors or upon the municipality.

To recover under section 1983 for his excessive force claim, Plaintiff Cordova must first prove that the Defendants deprived him of a right secured by the Constitution or federal statute; then, he must prove that the Defendants deprived him of this federal right under color of a state statute, ordinance, regulation, custom, or usage. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). On summary judgment, the practical question is whether there are any factual disputes regarding either of these elements that must be resolved by a trial. When a district court is determining whether there is a genuine issue of material fact for trial, it must view the evidence in the light most favorable to the nonmoving party -- in this case, Plaintiff Cordova. Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). Nonetheless, evidence is sufficient to create a genuine issue of material fact only if "a reasonable jury could return a verdict for the [Plaintiff]." Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997). A mere scintilla of evidence in support of the Plaintiff's position is therefore insufficient to create a genuine issue of material fact. Lawmaster

v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).

Cordova claims his constitutional rights were violated because the police officers used excessive force to arrest him. "In addressing an excessive force claim brought under [section] 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). Although the Plaintiff cites the Eighth Amendment, an excessive force claim arising from an arrest is "most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures of the person." Id. (quotation omitted). Therefore, "all claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Id. at 395 (emphasis in original omitted).

If the force used by the Defendant police officers to arrest Cordova was reasonable -- when viewed in the light most favorable to the Plaintiff -- and did not violate the Fourth Amendment as a matter of law, then there was no constitutional violation, the Plaintiff's section 1983 excessive force claim must fail because he

has not been deprived of any federal right, and the Defendants are entitled to summary judgment. This is true for the police officers who directly participated in Cordova's arrest, the mayor and police chief, and the city. See Trigalet v. City of Tulsa, Okl., 239 F.3d 1150, 1154 (10th Cir. 2001) (municipality may not be held liable under section 1983 unless the actions of its employees violated a plaintiff's constitutional rights) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.")).

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citations and quotations omitted). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. A court must pay "careful attention to the facts and circumstances of each

particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). A court must judge the facts and circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.

Id. at 396-97 (quotation omitted). Although a court must view the facts and circumstances from the perspective of a reasonable officer on the scene, the subjective intent of the actual officers on the scene is irrelevant:

> the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Id. at 397.

In this case, the Court finds that the force used by the police officers to arrest Cordova was reasonable, and no reasonable jury could find otherwise. Officer Mynatt was responding to a violent call for service -- a reported fight -- at Goofy's Tavern when he observed Cordova leaving the scene of the reported fight quickly. Cordova, who was aware of the police lights and siren behind him, refused to stop his vehicle immediately; rather, he chose to flee and drove to another location before stopping. This initial flight from arrest resulted in the officer being led to a place of a noncompliant driver's choosing in the dark of night. Given these two facts alone, Officer Mynatt's decision to draw his weapon and assertively command Cordova to return to his car was objectively reasonable and cannot be faulted. In addition, Officer Mynatt was unaware that additional officers were on the scene when he first exited his patrol car, so it was reasonable for him to believe that he was alone. It was also reasonable for Officers Mims, Defoe, and Sutton to draw their weapons when they saw that Officer Mynatt had drawn his, especially since they were also aware of Cordova's initial flight from arrest. The Plaintiff claims that the drawing of weapons showed a disregard for public safety. This Court disagrees: given the violent nature of the initial call for

service, Cordova's initial flight from arrest, the time of day, and the location of the stop, it was objectively reasonable for the officers to display their weapons. The displaying a gun is very different from using a gun, and the officers' individual decisions not to use their weapons were also reasonable and commendable.

After exiting his vehicle, Cordova refused to obey Officer Mynatt's orders to sit down in his car; instead, Cordova moved towards the officer. Given Cordova's noncompliance and intoxication and the presence of other unknown persons on the scene, Officer Mynatt's decision to push Cordova back while keeping his gun in his right hand was objectively reasonable. When Cordova objected to being touched by Officer Mynatt and again moved towards him, the encounter reached a critical point. It was objectively reasonable -- and demonstrated good decision-making under pressure -- for Officer Mims to holster his weapon and physically take Cordova to the ground. Although Cordova's face was bloodied in the process, the force used was not unreasonable because Cordova was resisting Officer Mynatt's lawful commands. If anything, Officer Mims prevented greater violence by preventing Cordova from reaching Officer Mynatt a second time. Reasonable people could debate the necessity of dropping the Plaintiff to the pavement versus pushing

him back against his car again, but that would be the type of armchair second-guessing that is inappropriate in these kinds of cases.  Given the facts and circumstances, a reasonable jury could not find that the officer's decision to take Cordova down to the ground was unreasonable, nor could a reasonable jury find that the method of taking Cordova to the ground was unreasonable.

After Cordova was taken to the ground, the officers forcibly handcuffed him.  Handcuffing a noncompliant, intoxicated man requires physical contact that reasonably includes sitting or kneeling on the person for a short time as alleged in this case.  This is especially true where other unknown persons -- the Plaintiff's cousins, for example -- are on the scene.  Given the facts and circumstances, a reasonable jury could not find that sitting and kneeling on the Plaintiff for a short period of time while cuffing him was unreasonable, nor could a reasonable jury find that carrying him out of the street and setting him face-down on the sidewalk was unreasonable.  If the officers bounced Cordova face-down on the sidewalk, the case might be different -- but they did not and it is not.

Viewing the circumstances of the arrest in the light most favorable to the Plaintiff, the Court finds that the force used by

the police officers on the scene was reasonable and no reasonable jury could find otherwise; therefore, the Plaintiff cannot prove that he was deprived of his Fourth Amendment rights. Since the Plaintiff cannot prove a constitutional violation, he cannot maintain his section 1983 claim against any of the Defendants and there is no need to decide whether and how the rules governing qualified immunity or section 1983 municipal liability apply to this case. The Defendants' motions for summary judgment on Plaintiff's 42 U.S.C. § 1983 claim are **GRANTED**, and the Plaintiff's section 1983 claims against all Defendants are **DISMISSED WITH PREJUDICE**.

The Court exercises its discretion under 28 U.S.C. § 1367 to decline jurisdiction over the Plaintiff's remaining state law claims because the Plaintiff's federal claim has been dismissed and state law issues predominate in the state law claims. Therefore, Plaintiff's negligence, battery, and intentional infliction of emotional distress claims for relief are **DISMISSED WITHOUT PREJUDICE**.

Dated this 25Th day of August, 2006.

/s/ Clarence W. Brimmer
UNITED STATES DISTRICT JUDGE